# EXHIBIT C

**THE FUND INVESTOR GROUP'S JOINT DECLARATION
IN SUPPORT OF THEIR MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**

We, the undersigned, pursuant to 28 U.S.C. §1746 declare as follows:

1. We, Marshall Glickman, Andrew Lietz, Donna Lietz, Keith C. Charles, and EMFO, LLC (the "Fund Investor Group") respectfully submit this Joint Declaration in support of our motion for appointment as lead plaintiff and approval of lead counsel in the federal securities class actions brought on behalf of all purchasers of shares of the Infinity Q Diversified Alpha Fund (the "Fund") between December 21, 2018 and February 22, 2021, inclusive (the "Class Period"), and all those who held shares of the Fund as of February 22, 2021.

2. We are each informed of and understand the requirements and duties imposed us by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Each of us has personal knowledge about the information in this Joint Declaration relating to ourselves, and if called as witnesses, we each could testify competently thereto.

3. I, Marshall Glickman, as reflected in my Certification, purchased shares of the Fund during the Class Period and/or held shares of the Fund on February 22, 2021. I am motivated to recover my related damages for my own benefit and the benefit of all members of the Class. My wife has assigned her rights in this litigation to me and that assignment is annexed hereto as Appendix A. I am sole owner of a small business corporation ("S-Corp") with claims in this litigation and, to the extent necessary, that entity has also assigned its rights in this litigation to me. I reside in Vermont, am a self-employed business owner, and hold a Bachelor's Degree. I am a sophisticated investor with approximately 39 years of investing

experience.  After due consideration, I decided to join in and seek appointment as lead plaintiff with my fellow movants.

4.      I, Andrew Lietz, am Trustee of the Andrew E. Lietz Revocable Trust dated April 12, 1991.  As reflected in my Certification, the trust purchased shares of the Fund during the Class Period and/or held shares of the Fund on February 22, 2021.   I am motivated to recover my related damages for my own benefit and the benefit of all members of the Class.  I currently reside in New Hampshire.  I am retired and was previously President and CEO of an electronics company, and I hold a Bachelor's Degree.  I am a sophisticated investor with approximately six decades of investing experience.  After due consideration, I decided to join in and seek appointment as lead plaintiff with my fellow movants.

5.      I, Donna Lietz, am Trustee of the Donna M. Lietz Revocable Trust dated April 12, 1991.  As reflected in my Certification, the trust purchased shares of the Fund during the Class Period and/or held shares of the Fund on February 22, 2021.   I am motivated to recover my related damages for my own benefit and the benefit of all members of the Class.  I am married to Andrew Lietz.  I currently reside in New Hampshire and hold an Associate's Degree.  I am a sophisticated investor with approximately six decades of investing experience. After due consideration, I decided to join in and seek appointment as lead plaintiff with my fellow movants.

6.      I, Keith C. Charles, as reflected in my Certification, purchased shares of the Fund during the Class Period and/or held shares of the Fund on February 22, 2021.   I am motivated to recover my related damages for my own benefit and the benefit of all members of the Class.  I reside in Florida, am employed as an Ophthalmologist, and hold Bachelor of Science and Medical Doctorate degrees.  I am a sophisticated investor with approximately 2.5

years of investing experience. After due consideration, I decided to join in and seek appointment as lead plaintiff with my fellow movants.

7. I, Allan Budelman, am the Co-Founder and Chief Executive Officer of EMFO, LLC, or Emerald Multi-Family Office ("Emerald"), a private wealth management advisory firm. I am duly authorized to act on behalf of Emerald. As reflected in Emerald's Certification, certain of Emerald's clients purchased shares of the Fund during the Class Period and/or held shares of the Fund on February 22, 2021. These clients have assigned their rights in this litigation to Emerald and those assignments are annexed hereto as Appendix B. Emerald is motivated to recover its related damages for its own benefit and the benefit of all members of the Class. I reside in Florida and Emerald is based in Florida. After due consideration, Emerald decided to seek appointment as lead plaintiff with its fellow movants.

8. We believe that the allegations in the related actions are meritorious and that the Class will benefit from having highly motivated investors with substantial financial interests at stake control the case. We believe that our combined efforts, knowledge, and diverse backgrounds will best serve the Class. If appointed as lead plaintiff, our primary goal will be to ensure that the Class achieves the largest possible recovery. We feel the combined knowledge and presence of our five group members will benefit the class. We understand that our efforts as lead plaintiff, if successful, will benefit the entire Class.

9. We have decided to retain Scott+Scott Attorneys at Law LLP ("S+S") and we believe we can collectively manage the litigation and our counsel in an effective manner. We understand the importance of selecting qualified counsel to represent the interests of the Class and to do so efficiently. We are aware of and have been advised of the experience, resources, and successes of our proposed lead counsel, S+S, and are aware that it is an accomplished law

firm with a history of achieving significant settlements and corporate governance reforms in similar actions.  Through our oversight, we will ensure that S+S will prosecute this litigation in a zealous and efficient manner.

10.     Upon learning of each other's interest seeking appointment of lead plaintiff in this matter through our counsel, we communicated with one another and our counsel via a conference call on April 27, 2021, where we discussed among other things: the allegations and the strength of the claims against defendants; a strategy for prosecuting these actions; the role of the lead plaintiff and the lead plaintiff selection and litigation process; the benefits that the Class would receive from the leadership of a group of like-minded investors; a shared desire to achieve the best possible result for the class; our interests in prosecuting the case in a collaborative, likeminded manner; and the actions that we will take to continue to ensure that the claims will be zealously and efficiently litigated.

11.     We understand that the federal securities laws and courts in this District permit groups to serve as lead plaintiff when the group can function cohesively and demonstrate that it will actively monitor the litigation to represent the interests of the Class.  We intend to prosecute the action against the Defendants in such an independent manner by, among other ways, staying informed about the litigation and overseeing our co-counsel. We agree that our collective resources and ability to deliberate and engage in joint decision-making will materially benefit and advance the interests of the class in this case.

12.     We are highly motivated to recover our substantial losses and intend to share our perspectives, experiences, and resources to direct this litigation. To this end, we discussed the importance of joint decision-making and maintaining communication that will enable each of us to confer, with or without counsel, via telephone and/or e-mail on short notice to ensure

that we will be able to make timely decisions.

13.     We have agreed that we will exercise joint decision-making and will jointly communicate with proposed lead counsel regarding the progress and prosecution of the action on a regular basis as well as when important decisions need to be made.  To that end, we have agreed that proposed lead counsel will provide us with periodic status reports and hold regular joint calls to discuss: (i) new developments in the action, (ii) all significant decisions concerning the prosecution of the case, (iii) litigation and settlement strategies, (iv) significant pleadings and briefs, (v) important discovery issues, (vi) attorney and expert work being performed, and (vii) any other issues bearing on the effective and efficient prosecution of this matter. Further, we agreed that we will make ourselves available for any appearances, depositions, and other necessary meetings to facilitate the prosecution of this action.

14.     Given our obligations to the class and our shared common interest in maximizing the recovery for all investors, we fully expect to reach a consensus regarding litigation decisions. However, in the unlikely event that a disagreement arises, we agree to abide by a majority vote.

15.     We are committed to satisfying our obligations if appointed lead plaintiff to ensure that the action will be vigorously prosecuted consistent with the requirements of the lead plaintiff provisions under the PSLRA and in the best interests of the class.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements relating to myself are true and correct to the best of my knowledge.

Executed April 27, 2021

Marshall Glickman

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements relating to myself are true and correct to the best of my knowledge.

Executed April 27, 2021



Andrew Lietz    TRUSTEE    4/27/21

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements relating to myself are true and correct to the best of my knowledge.

Executed April 27, 2021

Donna Lietz

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements relating to myself are true and correct to the best of my knowledge.

Executed April 27, 2021


Keith C. Charles

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements relating to myself are true and correct to the best of my knowledge.

Executed April 27, 2021

EMFO, LLC

By: Allan Budelman

# APPENDIX A

## ASSIGNMENT AGREEMENT

This Assignment Agreement is made and entered into as of the 23rd day of April, 2021 (the "Effective Date"), by and between Margaret Wimberger ("Assignor") and her husband, Marshall Glickman ("Assignee") (collectively, the "Parties").

The Parties hereby agree as follows:

1.    <u>Assignment</u>. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with purchases of shares of the Infinity Q Diversified Alpha Fund, made between January 1, 2016 and February 22, 2021 (the "Infinity Q Claims").

2.    <u>Acceptance and Assumption</u>. As of the Effective Date, Assignee hereby accepts the foregoing Assignment and agrees to assume all rights and perform all obligations of Assignor with respect to the Infinity Q Claims.

3.    <u>Remittance of Recovery</u>. Assignee hereby agrees that in the event he obtains any recovery in connection with its prosecution of the Infinity Q Claims, he will upon receipt of such recovery, promptly remit such recovery to Assignor.

4.    <u>Successors</u>. This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

**ASSIGNOR:**

By: _Margaret Wimberger_
      Name: Margaret Wimberger

**ASSIGNEE:**

By: _Marshall Glickman_
      Name: MARSHALL GLICKMAN

# APPENDIX B

DocuSign Envelope ID: 4F5411EE-A9D3-4E3F-A055-41F0E7DE6D4F

## ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Jodi and David Kreizer ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties").
Assignee.

The Parties hereby acknowledge and agree as follows:

1.  Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee.  Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

2.  Assignment. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

3.  Acceptance and Assumption. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

4.  Remittance of Recovery. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees.  Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

5.    <u>Hold Harmless.</u> In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6.    <u>Successor</u>. This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7.    <u>Governing Law</u>. This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**ASSIGNOR:**

By: _____
Name: Jodi Kreizer

By: _____
Name: David Kreizer

**ASSIGNEE:**

By: _____
Name: Allan M. Budelman
Title: Co-Founder and CEO of EMFO, LLC

## ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Patricia Leff ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties"). Assignee.

The Parties hereby acknowledge and agree as follows:

1. Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee. Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

2. Assignment. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

3. Acceptance and Assumption. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

4. Remittance of Recovery. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees. Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

5. Hold Harmless. In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless

5.    Hold Harmless. In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6.    Successor. This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7.    Governing Law. This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**ASSIGNOR:**

By: _____

Name: Patricia Leff

**ASSIGNEE:**

By: _____

Name: Allan M. Budelman
Title: Co-Founder and CEO of EMFO, LLC

DocuSign Envelope ID: 146C9D9F-7A5E-467D-9B0F-3AC1A9711926

## ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Robin Levinson, TTEE ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties").
Assignee.

The Parties hereby acknowledge and agree as follows:

1. Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee. Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

2. __Assignment__. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

3. __Acceptance and Assumption__. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

4. __Remittance of Recovery__. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees. Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

5. <u>Hold Harmless</u>. In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6. <u>Successor</u>. This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7. <u>Governing Law</u>. This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**ASSIGNOR:**

By: *Robin Levinson*
    0EEF0AA38A334F9...
Name: Robin Levinson, TTEE

**ASSIGNEE:**

By: *Allan Budelman*
    982D579B50D647D...
Name: Allan M. Budelman
Title: Co-Founder and CEO of EMFO, LLC

DocuSign Envelope ID: EF379D1D-44E7-492E-860B-88AD080D6787

## <u>ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q</u>

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Jennifer and Scott Ross ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties").
Assignee.

The Parties hereby acknowledge and agree as follows:

1. Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee. Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

2. <u>Assignment</u>. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

3. <u>Acceptance and Assumption</u>. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

4. <u>Remittance of Recovery</u>. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees. Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

- 1 -

5.     <u>Hold Harmless.</u> In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6.     <u>Successor.</u> This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7.     <u>Governing Law.</u> This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**<u>ASSIGNOR:</u>**

By: _____
Name: Jennifer Ross

By: _____
Name: Scott Ross

**<u>ASSIGNEE:</u>**

By: _____
Name: Allan M. Budelman
Title: Co-Founder and CEO of EMFO, LLC

DocuSign Envelope ID: 8E12D49B-6578-4F8A-B92C-C38EE754BC63

## ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Elliot Schnier ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties"). Assignee.

The Parties hereby acknowledge and agree as follows:

1. Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee. Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

2. Assignment. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

3. Acceptance and Assumption. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

4. Remittance of Recovery. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees. Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

5. Hold Harmless. In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless

from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6.     <u>Successor</u>. This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7.     <u>Governing Law</u>. This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**ASSIGNOR:**

By: _____

Name: Elliot Schnier

**ASSIGNEE:**

By: _____

Name: Allan M. Budelman

Title: Co-Founder and CEO of EMFO, LLC

DocuSign Envelope ID: B97D1965-8863-4BDB-ACB8-BF49A7BE88F0

## ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Jessica and Gary Shendell and Jessica Shendell Revocable Trust ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties").
Assignee.

The Parties hereby acknowledge and agree as follows:

1. Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee. Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

2.   Assignment. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

3.   Acceptance and Assumption. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

4.   Remittance of Recovery. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees. Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

DocuSign Envelope ID: B97D1965-8863-4BDB-ACB8-BF49A7BE88F0

5.     Hold Harmless. In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6.     Successor. This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7.     Governing Law. This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**ASSIGNOR:**

By: _____
9F25D4FE65B44CB...
Name: Jessica Shendell

By: _____
B69412CE720C4BA...
Name: Gary Shendell

**ASSIGNEE:**

By: _____
982D579D58D647D...
Name: Allan M. Budelman
Title: Co-Founder and CEO of EMFO, LLC

DocuSign Envelope ID: F8D9D7F3-8085-4CC4-A5B5-2894ACD16458

## ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Christina Snyder ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties").
Assignee.

The Parties hereby acknowledge and agree as follows:

1. Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee. Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

2. Assignment. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

3. Acceptance and Assumption. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

4. Remittance of Recovery. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees. Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

5.     <u>Hold Harmless.</u> In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6.     <u>Successor</u>. This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7.     <u>Governing Law</u>. This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**ASSIGNOR:**

By: _____
Name: Christina Snyder, TTEE CAS Trust

**ASSIGNEE:**

By: _____
Name: Allan M. Budelman
Title: Co-Founder and CEO of EMFO, LLC

# ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Strawgate Investments LTD, Priscilla Strawgate, ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties").
Assignee.

The Parties hereby acknowledge and agree as follows:

1. Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee. Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

2. Assignment. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

3. Acceptance and Assumption. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

4. Remittance of Recovery. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees. Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

5.     Hold Harmless. In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6.     Successor. This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7.     Governing Law. This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**ASSIGNOR:**

By: _____

Name: Priscilla Strawgate

**ASSIGNEE:**

By: _____

Name: Allan M. Budelman

Title: Co-Founder and CEO of EMFO, LLC

## ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Gail Sugarman ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties").
Assignee.

The Parties hereby acknowledge and agree as follows:

1. Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee. Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

2. Assignment. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

3. Acceptance and Assumption. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

4. Remittance of Recovery. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees. Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

5. <u>Hold Harmless.</u> In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6. <u>Successor</u>. This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7. <u>Governing Law</u>. This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**ASSIGNOR:**

By: _Gail Sugarman_
Name: Gail Sugarman

**ASSIGNEE:**

By: _Allan Budelman_
Name: Allan M. Budelman
Title: Co-Founder and CEO of EMFO, LLC

# ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Jeffrey and Nancy Baumann and Jeffrey Baumann IRA ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties").
Assignee.

The Parties hereby acknowledge and agree as follows:

1. Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee. Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

2. Assignment. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

3. Acceptance and Assumption. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

4. Remittance of Recovery. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees. Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

5.    Hold Harmless. In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6.    Successor. This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7.    Governing Law. This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**ASSIGNOR:**

By: _____
Name: Jeffrey Baumann

By: _____
Name: Nancy Baumann

**ASSIGNEE:**

By: _____
Name: Allan M. Budelman
Title: Co-Founder and CEO of EMFO, LLC

- 2 -

## ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Gayla Carney and 2000 New Resolutions, LLC ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties").
Assignee.

The Parties hereby acknowledge and agree as follows:

1.  Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee. Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

2.  Assignment. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

3.  Acceptance and Assumption. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

4.  Remittance of Recovery. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees. Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

5.　　　<u>Hold Harmless.</u> In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6.　　　<u>Successor.</u> This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7.　　　<u>Governing Law.</u> This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**<u>ASSIGNOR</u>:**

DocuSigned by:

By: _Gayla Carney_____
AADFEBEBD85B4F8...
Name: Gayla Carney


**<u>ASSIGNEE</u>:**

DocuSigned by:

By: _Allan Budelman_____
982D579D58D647D...
Name: Allan M. Budelman
Title: Co-Founder and CEO of EMFO, LLC

DocuSign Envelope ID: 6512737C-87B4-4242-956D-3EF0E53AA8AB

## ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Rosalie Cosio and Rosalie Cosio IRA ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties").
Assignee.

The Parties hereby acknowledge and agree as follows:

    1.  Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee.  Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

    2.  Assignment. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

    3.  Acceptance and Assumption. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

    4.  Remittance of Recovery. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees.  Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

5.      <u>Hold Harmless.</u> In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6.      <u>Successor</u>. This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7.      <u>Governing Law</u>. This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**<u>ASSIGNOR:</u>**

By: *Rosalie Cosio*

Name: Rosalie Cosio

**<u>ASSIGNEE</u>:**

By: *Allan Budelman*

Name: Allan M. Budelman
Title: Co-Founder and CEO of EMFO, LLC

## <u>ASSIGNMENT AGREEMENT FOR CLASS ACTION ON INFINITY Q</u>

This Assignment Agreement is made and entered into as of the _26th_____ day of _April_____, 2021 (the "Effective Date"), by and between _Ellen and Gerald Greenspoon and Gerald Greenspoon IRA ("Assignor") and EMFO, LLC, an SEC registered investment adviser ("Assignee") (collectively, the "Parties").
Assignee.

The Parties hereby acknowledge and agree as follows:

1. Purpose/Aggregation of Assigned Claims. Assignor is a client of Assignee. Assignee seeks this Assignment from each of its affected clients, including Assignor, relative to prosecution of the Infinity Q Claims referenced in paragraph 2 below. Assignee shall pursue the Infinity Q Claims upon behalf of all participating Assignee's clients who execute this Assignment. Upon recovery, if any, Assignee shall remit to Assignor its pro-rata share of any recovered funds, net of the costs of recovery, including reasonable attorneys' fees, which will be shared pro-rata among all participating clients who execute this Assignment. Pro-rata shall mean Assignor's Infinity Q Claim (based upon Assignor's Infinity Q investment) relative to the total of all Infinity Q Claims of Assignee's participating clients. The pro-rata amount of costs of recovery will depend upon the total of all participating Infinity Q Claims. The greater the participation, the lesser the pro-rata costs, and vice versa. If there is no recovery, no portion of the costs shall be payable by the Assignor. Although Assignee believes that this Assignment is in the best interest of its clients, no client of Assignee shall be required to participate.

2. <u>Assignment</u>. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in Assignor's claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with the purchases of securities of the Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX) (the "Infinity Q Claims").

3. <u>Acceptance and Assumption</u>. As of the Effective Date, Assignee hereby accepts the foregoing assignment and agrees to assume and perform all obligations of Assignor with respect to the Infinity Q Claims.

4. <u>Remittance of Recovery</u>. Assignee hereby agrees that in the event it obtains any recovery in connection with its prosecution of the Infinity Q Claims, it will upon receipt of such pro-rata recovery, promptly remit such recovery to Assignor, net of the pro-rata costs of recovery, including reasonable attorneys' fees. Upon Assignee's receipt of any recovery funds, the recovery funds will be held in an escrow account maintained by EMFO at a qualified custodian designated bank for subsequent pro-rata distribution to the Assignor. Consistent with the requirements of the custody rule under the Investment Advisers Act of 1940, the escrow funds shall be subject to examination as part of the Assignee's pending 2021 annual surprise CPA examination. Except for reimbursement of recovery costs, Assignee shall not receive any portion of the recovery.

5.    <u>Hold Harmless.</u> In consideration for the Assignee agreeing to prosecute the Infinity Q Claims, the Assignor, by execution below, agrees to release and hold the Assignee harmless from any claims, demands and causes of action arising from, or attributable to, the Assignor's investment in Infinity Q Diversified Alpha Fund (ticker: IQDAX/IQDNX).

6.    <u>Successor.</u> This Assignment shall be binding upon and inure to the benefit of the parties, their successors, and assigns.

7.    <u>Governing Law.</u> This Assignment Agreement shall be construed in accordance with and governed by the laws of the State of Florida.

**ASSIGNOR:**

By: _____
Name: Ellen Greenspoon

By: _____
Name: Gerald Greenspoon

**ASSIGNEE:**

By: _____
Name: Allan M. Budelman
Title: Co-Founder and CEO of EMFO, LLC