UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LIANG YANG,                                              :
                                                         :
                      Plaintiff,          :
                                                         :       MEMORANDUM AND
    -against-                                           :       ORDER
                                                         :
TRUST FOR ADVISED PROTFOLIOS, INFINITY Q   :       21-CV-1047 (FB)(MMH)
CAPITAL MANAGEMENT, LLC, CHRISTOPHER E.    :
KASHMERICK, JOHN C. CHRYSTAL, ALBERT J.    :
DIULIO, S.J., HARRY E. RESIS, RUSSELL B.   :
SIMON, LEONARD POTTER, and JAMES           :
VELISSARIS,                                              :
                                                         :
                      Defendants.        :
------------------------------------------------------------------x

**MARCIA M. HENRY**, United States Magistrate Judge:

       Plaintiff Liang Yang ("Yang") brings this action on behalf of himself and all others similarly situated who purchased Infinity Q Diversified Alpha Fund ("the Fund") Investor Class shares or Institutional Class shares between December 21, 2018 and February 22, 2021, against Trust for Advised Portfolios ("TAP"), Infinity Q Capital Management, LLC ("Infinity Q"), and Individual Defendants Christopher E. Kashmerick, John C. Chrystal, Albert J. DiUlio, S.J., Harry E. Resis, Russell B. Simon, Leonard Potter, and James Velissaris, alleging violations of the Securities Exchange Act of 1934 (the "Securities Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq*. (the "PSLRA"). (*See generally* Compl., ECF No. 1.)

       Four movants initially sought appointment as lead plaintiff in this action. The Honorable Frederic Block referred these motions to the previously assigned magistrate judge and then to me. Three of the four movants have withdrawn their motions or filed their non-opposition. Currently pending before the Court is the motion of Schiavi + Company LLC DBA Schiavi + Dattani ("Schiavi and Dattani") for appointment as lead plaintiff and for appointment of their counsel

1

Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Boies Schiller Flexner LLP ("Boies Schiller") as lead counsel. (Schiavi and Dattani Mot., ECF No. 23.) For the reasons set forth below, the motion is granted.

## I.     BACKGROUND

Yang filed the Complaint on February 26, 2021, seeking to recover compensable damages caused by Defendants' alleged violations of the federal securities laws under the Securities Exchange Act. (*See generally* Compl., ECF No. 1.) As alleged in the Complaint, TAP is the registrant and issuer of the Fund, while Infinity Q is the Fund's investment advisor. (*Id.* ¶¶ 7–8.). The Individual Defendants serve as officers and trustees for TAP. (*Id.* ¶¶ 9–15.)

According to the Complaint, Defendants made several materially false and misleading statements regarding calculations of net asset value ("NAV") in 2019 and 2020 prospectuses filed with the U.S. Securities and Exchange Commission and signed by the Individual Defendants. (*Id.* ¶¶ 18–26.) Specifically, the Complaint alleges that:

> (1) Infinity Q's Chief Investment Officer made adjustments to certain parameters within the third-party pricing model that affected the valuation of the swaps held by the Fund; (2) consequently, Infinity Q would not be able to calculate NAV correctly; (3) as a result, the previously reported NAVs were unreliable; (4) because of the foregoing, the Fund would halt redemptions and liquidate its assets; and (5) as a result, the Prospectuses were materially false and/or misleading and failed to state information required to be stated therein.

(*Id.* ¶ 27.) These material misstatements and/or omissions caused a "precipitous decline in the market value of the Fund's securities," financially damaging Plaintiff and other similarly situated investors. (*Id.* ¶ 30.)

Notice of the pending class action was posted on *Business Wire* on February 26, 2021. (PSLRA Notice, Rosenfeld Decl. Ex. A, ECF No. 25-1 at 2.) On April 27, 2021, three purported

class members moved for appointment as lead plaintiff and for their counsel to be appointed as lead counsel in this action: the Palm Beach Investor Group ("Palm Beach") with counsel Wolf Haldenstein Adler Freeman & Herz LLP (Palm Beach Mot., ECF Nos. 15–17), Bruce Woda ("Woda") with counsel Pomerantz LLP (Woda Mot., ECF Nos. 19–21), and Schiavi and Dattani with counsel Robbins Geller and Boies Schiller (ECF Nos. 23–25). The same day, Plaintiff Leonard Sokolow filed a complaint in another proposed class action alleging nearly identical claims against the same Defendants as in the present action. *Sokolow v. Trust for Advised Portfolios, et al.*, 21-CV-2317 (FB) (E.D.N.Y.) ("*Sokolow*"). Purported class members Marshall Glickman, Andrew Lietz, Donna Lietz, Keith C. Charles, and EMFO, LLC (the "Fund Investor Group") moved to consolidate *Sokolow* and the present case and to appoint the Fund Investor Group as lead plaintiff. (Fund Investor Grp. Mot., ECF Nos. 26–27.) On April 28, 2021, Judge Block referred the pending motions to the Honorable Roanne L. Mann, the previously assigned magistrate judge, for decision.

    Subsequently, between May 10 and 11, 2021, three movants withdrew their motions or otherwise expressed non-opposition to Schiavi and Dattani's application. First, after the plaintiff in *Sokolow* voluntarily dismissed that action on May 10, 2021 (*Sokolow*, ECF No. 4), the Fund Investor Group withdrew its motion to appoint counsel and to consolidate the cases. (Fund Investor Grp. Not., ECF No. 34.) Second, on May 11, 2021, Woda and Palm Beach each filed a notice of non-opposition to Schiavi and Dattani's competing motion for appointment as lead plaintiff. (Woda Not., ECF No. 35; Palm Beach Not., ECF No. 38.)[1] Therefore, only Schiavi and Dattani's motion remains pending for decision.

---

[1] Based on these notices, Woda's and Palm Beach's respective motions for appointment as lead plaintiff are denied as moot.

## II. DISCUSSION

### A. Appointment of Lead Plaintiff

The PSLRA requires that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" in securities class actions. 15 U.S.C. § 78u-4(a)(3)(B)(i). "Even when a motion to appoint lead plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff." *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 325 F. Supp. 3d 310, 314 (E.D.N.Y. 2018).

In determining which individual or group is best suited to serve as lead plaintiff, courts adopt a two-step inquiry. *Darish v. N. Dynasty Mins. Ltd.*, Nos. 20-CV-5917 (ENV)(RLM) & 20-CV-6126 (ENV)(RLM), 2021 WL 1026567, at *5 (E.D.N.Y. Mar. 17, 2021); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 111–12 (E.D.N.Y. 2012). First, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the person or group of persons that "(aa) has either filed the complaint or made a motion in response to a notice . . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Second, if the court is satisfied that there is a presumptively adequate lead plaintiff, the court may then determine whether this presumption of adequacy has been rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff–(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

1. Notice

Under the PSLRA, a plaintiff who files a securities class action must publish:

> in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported class—(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Here, the notice requirements have been met. Yang filed this action on February 26, 2021. The same day, notice was posted on *Business Wire* publicizing the pendency of the current action, summarizing the claims and relevant class period, and advising that "[i]f you wish to serve as lead plaintiff, you must move the Court no later than April 27, 2021." (*See* Rosenfeld Decl. Ex. A, ECF No. 25-1 at 2.) "Business Wire is a suitable vehicle for meeting the statutory requirement that notice be published." *Chitturi v. Kingold Jewelry, Inc.*, 20-CV-2886 (LDH)(SJB), 2020 WL 8225336, at *3 (E.D.N.Y. Dec. 22, 2020) (citation and internal quotation marks omitted). Schiavi and Dattani filed the instant motion on April 27, 2021, in response to the notice and within 60 days of the notice. (Schiavi and Dattani Mot., ECF No. 23.) The notice is therefore sufficient and timely. 15 U.S.C. § 78u-4(a)(3)(A)(i).

2. Largest Financial Interest

The second requirement to support the most adequate plaintiff presumption is whether the movant "in the determination of the court, has the largest financial interest in the relief sought by the class[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). While the PSLRA does not delineate the factors courts must consider when assessing whether a movant has the largest financial interest, courts in this circuit generally look to:

5

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*In re Gentiva Sec. Litig.*, 281 F.R.D. at 112 (quoting *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 293 (S.D.N.Y. 2010)).  The most important of these factors, however, is the fourth factor: "the approximate loss suffered by the movant." *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

As the sole remaining movant, Schiavi and Dattani alleges that, through its assignments, it purchased 712,883 Fund shares during the class period for approximately $9.3 million.  (Dattani Cert., Rosenfeld Decl. Ex. C., ECF No. 25-4.)  As of the last day of trading before the Fund was suspended, Schiavi and Dattani held 705,838 Fund shares valued at approximately $9.1 million based on Defendants' last reported NAV on February 18, 2021.  (Rosenfeld Decl. Ex. D, ECF No. 25-4.)  Because redemptions in the Fund were frozen, the specific losses could not be determined.  (Schiavi and Dattani Mem., ECF No. 24 at 4.)  However, as noted, two movants declared their non-opposition to Schiavi and Dattani's motion based in part on Schiavi and Dattani's superior financial interest.[2]  Schiavi and Dattani therefore meets the financial interest test of the PSLRA.

---

[2] Woda filed a motion of non-opposition to the competing motions for lead plaintiff because Woda "does not appear to possess the largest financial interest in this litigation within the meaning of the PSLRA." (Woda Not., ECF No. 35 at 2.)  Palm Beach filed a notice of non-opposition to Schiavi and Dattani's motion because Schiavi and Dattani "appears to assert the largest individual loss and is, therefore, the presumptive lead plaintiff with the largest financial interest pursuant to the [PSLRA]." (Palm Beach Mem., ECF No. 38 at 1.)

### 3. Rule 23 Requirements

The Court must also determine whether Schiavi and Dattani "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see Darish*, 2021 WL 1026567 at *6. "In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements—typicality and adequacy—are satisfied." *Chitturi*, 2020 WL 8225336, at *5.

"Lead plaintiffs' claims are typical where each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-CIV-4420 (PAE), 2020 WL 5548856, at *5 (S.D.N.Y. Sept. 16, 2020) (internal quotations omitted). Schiavi and Dattani satisfy this requirement because they, like the other purported class members, allege that they purchased the Fund's shares during the Class Period (via their client assignments) and that Defendants' misstatements and/or omissions caused a decline in the market value of the Fund's shares, financially damaging Schiavi and Dattani and other similarly situated investors. (Compl. ¶¶ 18–30.) "That is 'all that is required to demonstrate typicality at this stage.'" *In re Hebron Tech. Co.*, 2020 WL 5548856, at *5 (quoting *In re Petrobas Sec. Litig.*, 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015)).

"The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the [proposed lead plaintiff and] class [have] a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 (SLT)(RER), 2011 WL 3511057, at *4 (E.D.N.Y. May 31, 2011), *report and recommendation adopted*, 2011 WL 3511045 (E.D.N.Y. Aug. 10, 2011)

(quoting *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923 (DRH)(JO), 2006 WL 1120619, at *3 (E.D.N.Y. Apr. 26, 2006)).  Schiavi and Dattani's counsel, Robbins Geller and Boies Schiller, have extensive experience litigating securities and other class actions and therefore have the ability to conduct the litigation effectively.  *See, e.g.*, *Gordon v. Vanda Pharmaceuticals Inc.*, No. 19-CV-1108 (FB)(LB), 2019 WL 7287202, at *4 (E.D.N.Y. May 24, 2019) (appointing Robbins Geller as lead counsel in a securities class action and collecting cases regarding same); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186–87 (S.D.N.Y. 2008) (appointing Boies Schiller as co-interim lead counsel).  There is no evidence that the class members' interests are antagonistic to one another.  *See In re Hebron Tech. Co.*, 2020 WL 5548856, at *6.  And as a sophisticated investment firm that sustained substantial financial losses, Schiavi and Dattani has a sufficient interest in the case's outcome to ensure vigorous advocacy.

Accordingly, Schiavi and Dattani satisfies the PSLRA Rule 23 requirement, which "'only [requires] a preliminary showing of typicality and adequacy' 'at this stage of the litigation.'" *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 30 (E.D.N.Y. 2019) (quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011)).  It is therefore entitled to the PSLRA presumption as the most adequate lead plaintiff.

### 4. Rebuttal of the Presumption

The presumption in favor of the most adequate plaintiff "may be rebutted only upon proof by a member of the purported class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see Emerson v. Mut. Fund Series Tr.*, No. 17-CV-2565 (ADS)(GRB), 2018 WL 10667922, at *1 (E.D.N.Y. Jan. 8, 2018).  No other purported class member has offered

proof that Schiavi and Dattani does not meet the PSLRA Rule 23 requirements of typicality and adequacy.[3] Additionally, no other member of the purported class currently opposes Schiavi and Dattani's motion, as the other movants have withdrawn their motions to be appointed lead plaintiff or filed subsequent notices of non-opposition to Schiavi and Dattani's application. (*See* ECF Nos. 34, 35 and 38.)

Accordingly, the Court finds that Schiavi and Dattani satisfies the requirements of the PSLRA and appoints Schiavi and Dattani as lead plaintiff. *Emerson*, 2018 WL 10667922, at *1; 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### B. Appointment of Lead Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). While "the lead plaintiff's right to select and retain counsel is not absolute," *City of Ann Arbor Emps'*

---

[3] While no other purported plaintiffs currently oppose Schiavi and Dattani's motion, Defendants responded to Schiavi and Dattani's pending motion (and the then-pending motion by Palm Beach, now moot) on May 11, 2021. (*See* Defs.' Mem., ECF No. 36.) Although Defendants "take no position with respect to the appointment of lead plaintiff or lead plaintiff's counsel," they raise two issues: (1) whether Schiavi and Dattani, an investment advisor, has constitutional standing to be lead plaintiff where it seeks appointment "through the use of post-litigation assignments of claims from its clients"; and (2) whether Schiavi and Dattani has statutory standing—that is, "discretionary investment authority and a pre-suit authorization to bring claims for their clients"— to be lead plaintiff. (*Id.* at 2–3.) The Court need not address these arguments at this stage of the litigation because the most adequate plaintiff presumption may be rebutted "only upon proof by a member of the purported plaintiff class," *see* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II), which Defendants are not. However, the Court notes that the cases Defendants cite involve lead plaintiffs whose assignments were completed *after* their appointment as lead plaintiffs, while Schiavi and Dattani's assignments were obtained *before* they filed the instant motion. (*See* Schiavi and Dattani Reply, ECF No. 41 at 4–5; Rosenfeld Decl. Ex. B, ECF No. 25-2.) Additionally, each assignment in this case transfers to Schiavi and Dattani each assignor's rights in any causes of action "arising from violations under the federal securities law in connection with the purchase of" the Fund's Individual and Institutional Shares and appoints Schiavi and Dattani "as the true lawful attorney-in-fact for the purposes of exercising all powers relating to such causes of action." (*See* Rosenfeld Decl. Ex. B., ECF No. 25-2.)

9

*Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*, No. 08-CV-1418 (LDW)(ETB), 2009 WL 10709107, at *5 (E.D.N.Y. Mar. 9, 2009) (citations omitted), "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 211 (E.D.N.Y. 2019); s*ee also Brady v. Top Shis Inc.*, 324 F. Supp. 3d 335, 352 (E.D.N.Y. 2018) ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.") (internal quotations omitted). "In assessing a plaintiff's selection and retention to represent a purported class, courts give significant weight to counsel's experience." *Darish*, 2021 WL 1026567, at *8 (citing *Rauch*, 378 F. Supp.3d at 211).

As noted above, Schiavi and Dattani have retained Robbins Geller and Boies Schiller, law firms that have significant experience in similar litigation here and in other districts. *See, e.g.*, *Gordon*, 2019 WL 7287202, at *4 (appointing Robbins Geller as lead counsel and collecting cases); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. at 186–87 (appointing Boies Schiller as co-interim lead counsel); *In re Google Digital Publisher Antitrust Litig.*, No. 5:20-CV-8984 (BLF) (N.D. Cal.) (ECF No. 76) (appointing Boies Schiller as co-lead counsel)[4]; *accord Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100 & n.219 (S.D.N.Y. 2015) (appointing Robbins Geller as class counsel and collecting cases; Boies Schiller represented defendants). The Court is satisfied that Robbins Geller and Boies Schiller are qualified to "protect the interests of the class" and appoints them as lead plaintiff's counsel. *Rauch*, 378 F. Supp. 3d at 211.

---

[4] This action was later transferred to the Southern District of New York. *In re Google Digital Publisher Antitrust Litig.*, 21-CV-7034 (PKC) (S.D.N.Y.).

### III.     CONCLUSION

Based on the foregoing, Schiavi and Dattani's motion for appointment as lead plaintiff at ECF No. 23 is **granted**, and the Court appoints Robbins Geller Rudman & Dowd LLP and Boies Schiller Flexner LLP as co-lead counsel.  The motions to appoint lead plaintiff at ECF Nos. 15 and 19 are **denied as moot**.

SO ORDERED.

Brooklyn, New York
March 31, 2022

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge