**Robbins Geller**
**Rudman & Dowd LLP**

Boca Raton     Melville        San Diego
Chicago        Nashville       San Francisco
Manhattan      Philadelphia    Washington, D.C.

Samuel H. Rudman
srudman@rgrdlaw.com

August 12, 2022

VIA ECF

Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *In re Infinity Q Diversified Alpha Fund and Infinity Q Volatility Alpha Fund, L.P. Securities Litigation*, No. 1:21-cv-1047-FB-MMH (E.D.N.Y.)

Dear Judge Block:

    Lead Plaintiff Schiavi + Company LLC DBA Schiavi + Dattani and plaintiff Dominus Multimanager Fund, Ltd. (collectively, "Plaintiffs") respectfully submit this response to the non-settling defendants'[1] pre-motion letter (ECF 72) ("Defs' Ltr.") regarding their anticipated motions to dismiss the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 67) ("Complaint") in the event settlement is not reached with these Defendants. Plaintiffs' claims include strict liability and negligence claims under §§11, 12(a)(2) and 15 the Securities Act of 1933 ("Securities Act") and fraud claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission Rule 10b-5 arising from the collapse of the Infinity Q Diversified Alpha Fund (the "Diversified Fund"), the Infinity Q Volatility Alpha Fund, L.P., and the Infinity Q Volatility Alpha Offshore Fund, Ltd. (together, the "Funds").

    Defendants' anticipated motions would be groundless and should be denied. As an initial matter, Defendants argue, without any citation to authority, that Plaintiffs lack standing. This argument contravenes established Second Circuit authority (*see W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) ("[A]n assignment of claims transfers legal title or ownership of those claims and thus fulfills the constitutional requirement of an 'injury-in-fact.'")), and was already disapproved by the Court in its Order appointing Lead Plaintiff. ECF 55 at 9 n.3.

---

[1] The non-settling defendants are defendants Infinity Q Capital Management LLC (the "Adviser"), Bonderman Family Limited Partnership, LP, Infinity Q Volatility Alpha Fund, L.P., Infinity Q Volatility Alpha Offshore Fund, Ltd., Leonard Potter, Infinity Q Capital Management Equity, LLC, Scott Lindell, and James Velissaris (collectively referred to herein as "Defendants").

Next, Defendants argue that the Complaint fails to allege any materially false and misleading statements. However, the Complaint specifies precisely the who, what, where, and when of the statements and explains why each was materially false and misleading. ¶¶72-111.[2] That is more than is necessary under the Securities Act for non-fraud claims (*see NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 157 (2d Cir. 2012)), and all that is required under the Exchange Act. *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 166-67 (2d Cir. 2021). Indeed, Defendants have already publicly admitted that their statements were materially false and misleading, resulting in a material overstatement of the Funds' net asset values ("NAVs") and the forced remarking of the Funds' portfolios. *E.g.*, ¶¶16-21, 68-69. These statements misrepresented historical facts and were unaccompanied by meaningful cautionary language, and thus cannot be protected by any safe harbor for forward looking statements. *See, e.g., In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 246-47 (2d Cir. 2016); *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 142 (2d Cir. 2010) ("It is settled that the bespeaks-caution doctrine applies only to statements that are forward-looking.").

Ultimately, Defendants' misrepresentations precipitated one of the worst blowups in investment fund history, resulting in a barrage of civil and criminal charges being brought by a variety of federal regulators, the forced liquidation of the Funds, and the Funds' investors suffering hundreds of millions of dollars in losses. In addition, Defendants utterly failed to provide the oversight and valuation controls represented to investors. If Defendants had actually done what they told investors they were doing this disaster would have been avoided. Likewise, Defendants' contention that the Complaint fails to "attribute any misleading statements" (Defs' Ltr. at 2) to them is simply wrong (*see, e.g.*, ¶¶31-33, 40-42, 52, 57, 133, 214), and, in any event, ignores that Defendants are additionally liable under relevant scheme liability provisions. *See Lorenzo v. Sec. & Exch. Comm'n*, _ U.S._, 139 S. Ct. 1094, 1104 (2019).

Defendants' argument that they are not proper defendants under the Securities Act similarly misses the mark. For example, §11 expressly imposes liability on those who consent to being named as "having prepared or certified any report or valuation which is used in connection with the registration statement," such as the Adviser. 15 U.S.C. §77k(a)(4). Under §12(a)(2) Defendants are liable if they "successfully solicit[ed] the purchase, motivated at least in part by a desire to serve [their] own financial interests or those of the securities owner" (*Pinter v. Dahl*, 486 U.S. 622, 647 (1988)) – and no one's financial interests were better served by soliciting investments in the Funds than Defendants. Defendants are also plainly appropriate control persons under §15 of the Securities Act (as well as §20(a) of the Exchange Act) as Defendants include, *inter alia*, the majority shareholders of the Adviser and its executive officers and directors.

---

[2] All "¶" or "¶¶" references are to the Complaint unless otherwise noted.

Defendants next argue that the Complaint fails to plead loss causation. But as the Complaint makes clear, this case involves no *force majeure*: the devastating losses suffered by investors in the Funds were the direct and proximate result of Defendants' own acts and failures to act. *E.g.*, ¶¶209-211; *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402-03 (2d Cir. 2015). Defendants' related contention that Plaintiffs have not pled actual reliance or an entitlement to a presumption of reliance simply mischaracterizes the Complaint. *E.g.*, ¶¶204-208.

Finally, notwithstanding their public admissions that the NAVs of the Funds were intentionally mismarked by the Chief Investment Officer of the Adviser over a multi-year period (namely, Mr. Velissaris, who himself has joined Defendants' letter), and their undeniably central roles in perpetrating one of the most significant investment fund collapses in history, Defendants contend, in conclusory fashion, that scienter has not been adequately alleged under the Private Securities Litigation Reform Act of 1995. To the contrary, Plaintiffs have more than adequately alleged each Defendants' scienter for purposes of the Exchange Act claims against them. ¶¶157-199. Even if some non-culpable inference could be conceived, it would not be *more* compelling than the commonsense inference that Defendants knew what they were doing when they were doing it. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007) (holding that to be adequately pled under §10(b) an inference of scienter must simply "be cogent and *at least as compelling* as any opposing inference of nonfraudulent intent") (emphasis added).

The Complaint adequately alleges claims against all Defendants, especially given that the facts alleged therein must be taken as true and all reasonable inferences drawn in favor of Plaintiffs at this stage of the litigation. Plaintiffs respectfully submit that any motions to dismiss the Complaint filed by Defendants should be denied.

Respectfully submitted,

SAMUEL H. RUDMAN

SHR:hs

cc: All counsel of record via ECF