# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION

| | |
|---|---|
| In re INFINITY Q DIVERSIFIED ALPHA FUND SECURITIES LITIGATION | Index No. 651295/2021<br><br>Part 53: Justice Andrew S. Borrok |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>CHARLES SHERCK'S MOTION TO INTERVENE</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

I.   INTERVENTION IS ALLOWED UNDER
     THE CPLR AND NOT OPPOSED BY PLAINTIFFS .......................................................... 2

II.   U.S. BANCORP WILL NOT BE ENTITLED TO INDEMNIFICATION ........................... 3

III.  PLAINTIFFS' OTHER ASSERTIONS ARE MERITLESS ................................................ 5

CONCLUSION .............................................................................................................................. 7

**TABLE OF AUTHORITIES**

| **Cases** | **Page** |

*HSBC Bank U.S.A., N.A., Checking Account Overdraft Litig.*,
  49 Misc. 3d 1211(A), 29 N.Y.S.3d 847, 2015 WL 6698518 (N.Y. Sup. Ct. 2015) ................ 2

*Casey v. Citibank*,
  No. 1:13-CV-353, 2014 WL 3468188 (N.D.N.Y. Mar. 21, 2014) .......................................... 2

*In re Facebook, Inc. Derivative Litig.*,
  No. CV 2018-0307, 2021 WL 4552158 (Del. Ch. Oct. 5, 2021) ............................................ 6

The Plaintiffs' Response to Proposed Intervenor Charles Sherck's Motion for Intervention ("Plaintiffs' Response") is heavy on hyperbole and light on facts. Neither Mr. Sherck nor his counsel are engaged in a "wide-ranging campaign to sow misinformation" (Resp. at 1, 8 & 12), nor do they seek to disrupt or delay the proposed settlement with respect to any defendant other than U.S. Bancorp. Rather, they were diligently pursuing the first-filed securities class action against U.S. Bancorp (a defendant with hundreds of millions of dollars of liability exposure) when this proposed settlement was announced purporting to release those claims for $250,000. The amount is so facially inadequate in view of U.S. Bancorp's role and potential liability that Mr. Sherck was required to intervene to protect the interests of the class members he represents in the Wisconsin action. As explained below, the CPLR allows intervention here (Plaintiffs do not even oppose the motion and their citations do not hold otherwise), and intervention is timely now because the settlement, if provided to class members, will create a Hobson's choice: class members will be asked to (a) give away their rights to a material recovery against U.S. Bancorp (a primary defendant) in exchange for settlement payments from other defendants; or (b) opt-out of the settlement *in its entirety as to all defendants*. This structural flaw is not necessary, and was created only by Plaintiffs' insistence in including U.S. Bancorp in the settlement despite having chosen not to pursue substantive litigation against it.

Plaintiffs' Response, at best, confirms the suspicions that led to this motion in the first place: the paltry sum agreed to by Plaintiffs with respect to U.S. Bancorp stems from a fundamental misunderstanding of the firm's contractual relationship with the Fund. U.S. Bancorp's agreements include indemnification provisions, but they expressly provide that U.S. Bancorp will be liable (with no right of indemnification) for its own ordinary negligence—a showing that can be made easily even as of today and will only be aided by discovery. U.S. Bancorp was the only service

provider with contractual, front-line responsibility for securities valuation in the largest misvaluation case ever, and no number of vague references to nonexistent conflicts or ulterior motives of counsel can explain away the inadequacy of the proposed settlement. It should not be presented to class members as currently designed.

I. **INTERVENTION IS ALLOWED UNDER THE CPLR AND NOT OPPOSED BY PLAINTIFFS**

Plaintiffs' citations to various non-binding cases do not preclude Mr. Sherck's intervention motion (which Plaintiffs ultimately do not oppose in any event). In *HSBC Bank U.S.A., N.A., Checking Acct. Overdraft Litig.*, 49 Misc. 3d 1211(A), 29 N.Y.S.3d 847, 2015 WL 6698518 (N.Y. Sup. Ct. 2015)—the only case Plaintiffs cite applying the CPLR—the Court denied the motion to intervene because the interveners did not have plausible objections relevant at the *preliminary* approval stage. *Id.* at \*10-11. The Court noted that the "goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class," and that "courts will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." *Id.* In that case, the Court found that "there is *no doubt* that the *proposed settlement is fair and within the range of possible approval*. Even if the Court accepts the [intervenors'] calculation of total damages . . . the $30 million in recovery here still represents *approximately 40% of the class members' total losses*, again, a fair, adequate and reasonable settlement, and well-within the possible range." *Id.* at \*11 (emphasis added).[1]

This case is quite different than *HSBC*. Under any calculation of damages, the proposed settlement with respect to U.S. Bancorp reflects less than 1% of losses and does not even approach

---

[1] Plaintiffs' citations to *Casey v. Citibank, N.A.*, 2014 WL 3468188, at \*1 (N.D.N.Y. Mar. 21, 2014) and other non-binding federal cases are distinguishable on similar grounds: the courts in those cases do not appear to have found the objections relevant to the legal standard at the preliminary approval stage.

a fair "range of possible approval." Moreover, the proposed settlement here, by design, is structurally coercive and the opt-out mechanism will not help: If preliminary approval is granted, class members will be forced choose between (a) accepting the settlement with all defendants (including U.S. Bancorp) and waiving valid claims against U.S. Bancorp for a wholly inadequate recovery from that defendant; or (b) opting out of the settlement in its entirety and forgoing participation in the recovery against the other defendants. Class members should not be required to give away their rights to a meaningful class-wide recovery against U.S. Bancorp in order to receive the benefits of a material settlement with other parties. Thus, unlike in *HSBC*, Mr. Sherck's objections in this case are directly relevant to the Court's consideration of preliminary approval, and his motion should be granted.

## II.   U.S. BANCORP WILL NOT BE ENTITLED TO INDEMNIFICATION

Plaintiffs' only substantive justification for the proposed settlement with U.S. Bancorp is that "pursuant to applicable indemnification agreements, this defendant can seek indemnification from the Funds." (Resp. at 5.) Plaintiffs notably do not cite or attach the purported "indemnification agreements," and their contention is contrary to the express terms of the relevant contracts between U.S. Bancorp and the Trust.

U.S. Bancorp has two relevant agreements with the Trust: a Fund Administration Servicing Agreement and a Fund Accounting Servicing Agreement, each dated January 1, 2014 (the "Agreements"). Both Agreements contain the following provision with respect to the Trust's indemnification of U.S. Bancorp (referred to as USBFS below), which is expressly limited to liability for *non-negligent conduct*:

> USBFS shall exercise reasonable care in the performance of its duties under this Agreement. USBFS shall not be liable for any error of judgment or mistake of law or for any loss suffered by the Trust in connection with its duties under this Agreement, including losses resulting from mechanical breakdowns or the failure of communication or power supplies beyond USBFS' control, except a loss arising out of or relating to USBFS' refusal or failure to comply with the terms of this Agreement or from its bad faith, negligence, or willful misconduct in the performance of its duties under this Agreement. Notwithstanding any other provision of this Agreement, if USBFS has exercised reasonable care in the performance of its duties under this Agreement, the Trust shall indemnify and hold harmless USBFS from and against any and all claims, demands, losses, expenses, and liabilities of any and every nature (including reasonable attorneys' fees) that USBFS may sustain or incur or that may be asserted against USBFS by any person arising out of any action taken or omitted to be taken by it in performing the services hereunder (i) in accordance with the foregoing standards, or (ii) in reliance upon any written instruction provided to USBFS by any duly authorized officer of the Trust, as approved by the Board of Trustees of the Trust, except for any and all claims, demands, losses, expenses, and liabilities arising out of or relating to USBFS' refusal or failure to comply with the terms of this Agreement or from its bad faith, negligence or willful misconduct in the performance of its duties under this Agreement. This indemnity shall be a continuing obligation of the Trust, its successors and assigns, notwithstanding the termination of this Agreement. As used in this paragraph, the term "USBFS" shall include USBFS' directors, officers and employees.

It is implausible that U.S. Bancorp will be able to show that it satisfied its ordinary duty of care in calculating the value of the Fund's derivative securities: the securities were overvalued by hundreds of millions of dollars for four years or more; they were reported at mathematically impossible prices according to the SEC; they did not match prices reported by other parties for the same securities; and the SEC figured out the ruse from the outside without nearly the access to information that U.S. Bancorp had. As to the specific misrepresentations at issue in the Wisconsin action, U.S. Bancorp was contractually responsible for preparing the Fund's public filings and, in particular, the sections regarding its oversight of securities valuation; it controlled the Fund with respect to those filings; its senior employees signed the Fund's registration statement; and its representations regarding its process for valuing securities were false for years. It is implausible that U.S. Bancorp would be indemnified for any liability it may incur.

Plaintiffs' conclusion that U.S. Bancorp's Agreements would "render any judgment against it in the Actions a pyrrhic victory" (Resp. at 10) is confusing at best given that any judgment would necessarily entail a finding of at least negligence if not worse. For that reason, it is considerably more likely that *U.S. Bancorp will be required to indemnify the Trust* for the monetary losses caused by the Fund's implosion pursuant to provisions in the same Agreements:

> USBFS shall indemnify and hold the Trust harmless from and against any and all claims, demands, losses, expenses, and liabilities of any and every nature (including reasonable attorneys' fees) that the Trust may sustain or incur or that may be asserted against the Trust by any person arising out of any action taken or omitted to be taken by USBFS as a result of USBFS' refusal or failure to comply with the terms of this Agreement, or from its bad faith, negligence, or willful misconduct in the performance of its duties under this Agreement. This indemnity shall be a continuing obligation of USBFS, its successors and assigns, notwithstanding the termination of this Agreement. As used in this paragraph, the term "Trust" shall include the Trust's directors, trustees, officers and employees.

Given that U.S. Bancorp's purported indemnification right apparently was a material factor in negotiation, the proposed settlement is fundamentally flawed with respect to U.S. Bancorp. That Plaintiffs have negotiated material recoveries from other defendants does not excuse the inadequacy of the settlement with U.S. Bancorp, nor should class members be forced to accept a wholly inadequate settlement as to a primary defendant merely because it has been bundled with settlements with others.

### III.     PLAINTIFFS' OTHER ASSERTIONS ARE MERITLESS

Plaintiffs' remaining contentions are neither here nor there:

- Mr. Sherck has not "moved for lead plaintiff in the Federal Action or sought to join the State Action" (Resp. at 3) because neither case named U.S. Bancorp when the Wisconsin case was filed. For the same reason, the Wisconsin case is not a "redundant proceeding" (Resp. at 11), but rather the first-filed case against a primary defendant.

- Mr. Sherck does not propose, at this late stage, to "add U.S. Bancorp as a defendant" in this case (Resp. 12) because the Wisconsin case is already being litigated. Plaintiffs could have pursued litigation against U.S. Bancorp in this case but chose not to.

- The fact that Plaintiffs have been negotiating a settlement since December 2021 does not undercut the Wisconsin case but rather draws into question the quality of the negotiations, given that they began even before the SEC filed its complaint in February 2022, which revealed significant additional information about the valuation issues.

- Plaintiffs' claims that the proposed settlement is "extraordinary" and "excellent" (Resp. at 5, 11) are based only on recoveries from other parties (which Mr. Sherck does not oppose), and Plaintiffs concede that the U.S. Bancorp settlement is immaterial.

- While "continued litigation" is allegedly the "primary obstacle to releasing" the Fund's cash reserve (Resp. at 6), Mr. Sherck does not seek to prevent the resolution of claims against other parties, which will result in an additional distribution to investors. Moreover, even if U.S. Bancorp had a plausible indemnification right (it does not), a material recovery against it will more than offset any delay in distributions.

- Plaintiffs do not dispute that there has been no fact discovery in this case, but they argue that they have obtained "over 171,000 documents" (Resp. at 9), presumably in connection with mediation. Without disclosing what the documents are, where they came from, or whether they relate to U.S. Bancorp, Plaintiffs should not be entitled to an inference in their favor.

- Mr. Sherck's counsel has no conflict because the parties in the Wisconsin and Delaware cases do not overlap other than as to U.S. Bancorp (a defendant in both cases), and Plaintiffs do not articulate any particular conflict. Neither case seeks a recovery against the Fund or the Trust, both cases seek to put money back into the pot for investors, and there is no blanket rule against representation in cases based on format of the action.[2]

---

[2] For example, in *Facebook, Inc. Derivative Litig.*, 2021 WL 4552158 (Del. Ch. Oct. 5, 2021), the court found that counsel (including counsel for Plaintiffs in this case) were not conflicted by representations in a direct case and derivative case because counsel was not asserting "internally inconsistent" claims. *Id.* at *4. Moreover, in that case—unlike here—counsel had even sued the corporation in the direct case that it sought to represent in the derivative case, but the court still found no conflict. *Id.*

- There is no "significant confusion" among class members other than as to why the proposed settlement is immaterial with respect to U.S. Bancorp, and counsel has not "publish[ed] a misleading class notice" or engaged in any improper "*ex parte* communications." (Resp. at 1.) The purported "misinformation" cited by Plaintiffs (Resp. at 10) consists of literally true information regarding the proposed settlement with respect to U.S. Bancorp as set forth in Plaintiffs' own filings. Plaintiffs articulate no theory as to how publicly disclosing facts about the proposed settlement are "prejudicing their due process rights." (Resp. at 1.)

## CONCLUSION

Mr. Sherck appreciates the Court's time and attention to this matter and respectfully requests that the Court grant his motion.

Dated: August 31, 2022
New York, New York

By: /s/ Aaron T. Morris
Aaron T. Morris
aaron@moka.law
Andrew W. Robertson
andrew@moka.law

**MORRIS KANDINOV LLP**
1740 Broadway, 15th Floor
New York, NY 10019
Tel. (877) 216-1552

## RULE 17 STATEMENT

Pursuant to 22 N.Y.C.R.R. §202.70(g), Rule 17, the undersigned counsel certifies that the foregoing brief was prepared using Microsoft Word with the following proportionally spaced typeface: Times New Roman, 12 point, double spacing.

The total number of words in the brief, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 1,859 words. By operation of Microsoft Word's word count function, this number includes legal citations and certain forms of punctuation.

Dated: August 31, 2022         By: /s/ Aaron T. Morris
                                   Aaron T. Morris
                                   aaron@moka.law

                                   **MORRIS KANDINOV LLP**
                                   1740 Broadway, 15th Floor
                                   New York, NY 10019
                                   Tel. (877) 216-1552